# Court of Appeals.

Oct. 1, 1892.

### PEOPLE v. FISHBOUGH.

(47 St. Rep. 768.)

Game law—Yellow birds.

The exposing of live yellow birds for sale is not a violation of section 12, chapter 534 of 1879, as amended by section 2, chapter 584 of 1880. This section relates to dead birds only.

Appeal from judgment entered on order of the general term of the supreme court in the second judicial department, affirming judgment entered upon decision of the trial court in favor of the plaintiff.

Josiah T. Marean, for appellant.

Thomas W. Fitzgerald, for respondents.

BRADLEY, J.—The action was brought to recover penalties for alleged violation of the statute which provides that "No

person shall at any time in this state kill or expose for sale, or have in possession after the same is killed, any eagle, wood-pecker, nighthawk, yellow bird, wren, martin, oriole or any song bird, under a penalty of five dollars for each bird so killed, ex-posed for sale or had in possession." Laws 1879, chapter. 534, § 12, as amended by Laws 1880, chapter 584, § 2.

The defendant in May, 1889, kept a bird store in the city of Brooklyn, and then had in her possession and exposed for sale seventeen live yellow birds. This was charged to be in viola-tion of such statute, and the determination to that effect re-sulted in a recovery of eighty-five dollars against the defendant.

The question is one of construction of the statute. And for that purpose reference may be had to the object in view, which was to prevent the destruction of the birds there mentioned. The prohibition, therefore, was directed to the killing of them, and to make it effectual in that respect was applied in like man-ner to the having them in possession after they were killed. It so far had relation only to the killing of birds and the posses-sion of them after they were killed. And although a person, by having the possession of live birds, does not violate the stat-ute, it is said that if he exposes them for sale he does violate it as effectually as if he should kill them, or have them in his possession after they were killed, because, perchance, the purchaser, who would violate no law in buying, might kill them. Is there any reason why the purchaser's possession of live birds would be more objectionable than that of the person from whom he should purchase them? If there is, and the sale is within the intended interdiction, why was not the purchase, as well as the sale within the statutory condemnation, and the pur-chaser as well as the seller, in like manner, subjected to the penalty? Inasmuch as the statute does not prohibit the having possession of the live birds, the reason is not apparent for the legislative intent to discriminate in that respect between the person who should sell and the person who should obtain from him the possession by purchase. It is, however, suggested that by putting live birds in the market they might come to the pos-

session of a purchaser who, for some lucrative purpose, would kill them. This is upon the assumption that they might be purchased for some sort of ornamentation, and for that purpose be killed. While such may or may not be the purpose of the sale and purchase, the act of the purchaser in buying would be no less within the reason for penal statutory imputation than would that of the seller. We have thus far proceeded with a view to the inquiry whether the legislative intent was such as to bring the charge made against the defendant within the statute, and think it was not unless the language employed fairly requires construction to that effect, and that the charge against her cannot for support rest upon doubtful interpretation.

While the statute may perhaps have been made to express more clearly than it did the purpose in its bearing upon a charge of the character of that made in the present case, we think the fair import of it is such that the prohibited exposure for sale relates to dead birds only. This would be the effect of the relation of the words "after the same is killed" back to the words "expose for sale," and thus restrict their application in like manner as are the words relating to the possession. This is the natural and more obvious meaning of the language used as it would ordinarily be understood, and it is the more reasonable interpretation of the statute in that respect. If the purpose had been to limit the application of the words "after the same is killed" to the possession, it could have been done by placing them between the words "or" and "have," so as to make it read, "Or after the same is killed have in possession," etc. It is suggested by counsel in support of the plaintiff's contention that if the legislature had intended to prohibit the exposure for sale of dead birds only, the section would have been constructed as follows: "No person shall at any time in this state kill and expose for sale, or have in his possession," etc. But it may be seen that within a statute so framed the killing might be inoffensive without the further act of exposure of the dead bird for sale by him who had killed it. At all events it would be open

to such construction.    There is no essential force in the criticism that application of the words of exposure for sale of dead birds only would render the words of possession useless because the former would include both.    It might and might not.    The use of the language as to both may not have been unreasonably precautions, as the act of exposure for sale might not necessarily be that of the person having the possession of them in the legal sense of the term.    The purpose of the statute was to prevent the killing of the specified birds, and to accomplish it, so far as it would, by prohibiting the having or exposing dead birds for sale.

The view here taken of the statute is that the transfer by one to another of live birds was not within its contemplated inhibition any more than was the possession of them.

Song birds known as such, in addition to those specially mentioned, were included within the terms of the statute.    They might be treated as pets, and while it would not be supposed that the legislature intended to prohibit their sale, the same reason would exist to prevent their destruction.

The language used in the act of 1879, and carried into that of 1880, was not first used there.    The same was used in some of the provisions of Laws 1871, chapter 721; Laws 1872, chapter 433; Laws 1874, chapter 511; Laws 1875, chapter 183.    The only apparent purpose of section 12, chapter 534, Laws 1879, was to take protection from the sparrow and give it to the robin, as in other respects it was substantially the same as section nine, of chapter 721, Laws 1871, and the amendment of 1880 merely left out the robin and bobolink.    All those statutes, so far as relates to the phrase in question, were, we think, entitled to the construction here given.    A like purpose and policy are carried into the only statute now remaining on the subject, Laws 1892, chapter 488, the seventy-eighth section of which provides that "wild birds shall not be killed or caught at any time or possessed after the same have been killed."

While this statute does not necessarily aid in the construction

of the former, it seems to embrace all that was essential in the other to accomplish the purpose in view there.

These views lead to the conclusion that the facts found upon which the defendant was charged with liability were not within the inhibition of the statute upon which it was predicated. And, therefore, the judgment should be reversed and a new trial granted, costs to abide the event.

All concur, except VANN and BROWN, JJ., dissenting.